# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ONEIDA M. PALMORE,                                    Case No. 1:20-cv-36
      Plaintiff,                                Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,                                      **ORDER**
      Defendant.

Plaintiff Oneida M. Palmore brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply

memorandum (Doc. 14).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on July 14, 2017, alleging

disability since May 26, 2017, due to leukemia, depression, and sarcoidosis. The applications

were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was

granted a *de novo* hearing before administrative law judge ("ALJ") Renita K. Bivins. Plaintiff

and a vocational expert ("VE") appeared and testified at the ALJ hearing on March 12, 2019. On

April 18, 2019, the ALJ issued a decision denying plaintiff's DIB and SSI applications. This

decision became the final decision of the Commissioner when the Appeals Council denied

review on November 19, 2019.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The ALJ's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The [plaintiff] has not engaged in substantial gainful activity since May 26, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: lymphoma (chronic lymphocytic leukemia) and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk for 6 hours per 8-hour day and sit for 6 hours per 8-hour day with normal breaks. She can occasionally climb ramps and stairs; occasionally climb ladders rope scaffolds. She can frequently balance and stoop; can occasionally kneel, crouch and crawl. She must avoid concentrated exposure to fumes emitting machinery (sic), vibration and hazards such as unprotected heights.

6. The [plaintiff] is capable of performing past relevant work as a fast food worker and daycare worker.  [This] past relevant work do[es] not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 26, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

 (Tr. 17-33).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to follow the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges the ALJ erred by: (1) failing to properly weigh the treating source medical opinions provided by Dr. Borna Reza Ghoorkhanian and Dr. Zartash Gul; (2) not sufficiently evaluating plaintiff's complaints of fatigue and weakness; and (3) relying on the answers to improper hypothetical questions at Step Five of the sequential evaluation process. (Doc. 8).

### 1. Whether the ALJ erred in evaluating the opinions of Drs. Ghoorkhanian and Gul

In her first assignment of error, plaintiff argues that the ALJ erred by improperly evaluating the opinions of her treating physicians, Dr. Ghoorkhanian and Dr. Gul. (Doc. 8 at PAGEID 2413). Specifically, plaintiff argues that the ALJ failed to weigh Dr. Ghoorkhanian's physical capacity assessment that plaintiff would need to recline or lie down in excess of standard workday breaks and would be absent from work three or four times a month due to her impairments. (*Id*. at PAGEID 2411, 2413-14, citing Tr. 432-33). Plaintiff additionally argues the ALJ erred by giving improper weight to Dr. Gul's opinion that plaintiff would be off task more than 15% of the time and would be absent more than four days of work per month.[1] (*Id*. at

---

[1] Plaintiff alleges no error in the ALJ's weighing of the other various medical opinions in the record.

2414-15, citing Tr. 1205-07). In response, the Commissioner contends that the ALJ reasonably weighed the opinions of plaintiff's treating physicians. (Doc. 13 at PAGEID 2435).

It is well-established that for claims filed prior to March 27, 2017, the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, a treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c).

However, effective March 27, 2017, the treating physician rule was eliminated when the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880; *see also* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply."). Because plaintiff's disability claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluating

6

medical opinion evidence apply to this claim.[2] *See Viccarone v. Saul*, No. 1:20-cv-782, 2021 WL 606374, at *11 (N.D. Ohio Jan. 22, 2021) (Report and Recommendation), *adopted*, 2021 WL 602974 (N.D. Ohio Feb. 16, 2021); *Daniels v. Comm'r of Soc. Sec.*, No. 3:19-cv-2946, 2020 WL 6913490, at *9 (N.D. Ohio Nov. 24, 2020).

For claims filed on or after March 27, 2017, the new regulations provide that the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b); *see Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-1958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) (citing 20 C.F.R. §§ 404.1520c(a), (b)(1) (alterations in original) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'").

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the

---

[2] The Court notes that both parties analyzed the ALJ's decision under the treating physician rule set forth in 20 C.F.R. § 404.1527. However, as plaintiff's claim was filed *after* March 27, 2017, the new regulations for evaluating medical opinion evidence under 20 C.F.R. § 404.1520c apply in this case.

supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* When two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ is required to "articulate how [he/she] considered the other most persuasive factors" of relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(b)(3).

### a. Medical records

According to treatment records from May 2017, plaintiff underwent a flow genetic study in 2015 that was consistent with chronic lymphocytic leukemia. (Tr. 485, 501). In early May 2017, CT scans of plaintiff's chest, abdomen and neck revealed extensive lymphadenopathy and "worrisome findings" for lymphoma. (Tr. 488). Plaintiff's CT scan findings were reported as "compatible with lymphoma." (Tr. 499). Following a lymph node biopsy, plaintiff was

8

diagnosed with chronic lymphocytic leukemia/small lymphocytic lymphoma (cancer of the immune system) on May 12, 2017. (Tr. 487).

On May 23, 2017, plaintiff was examined by oncologist Zartash Gul, M.D. for further evaluation and management of chronic lymphocytic leukemia. (Tr. 484). Plaintiff complained of malaise/fatigue and diaphoresis. She also reported chest, abdominal, and back pain, nausea, and vomiting. (Tr. 485). Dr. Gul reported that plaintiff's "excessive weight loss, B s/s ["B symptoms"][3] and worsening performance status are indications for therapy at this time." (Tr. 491). Dr. Gul ordered additional testing. (Tr. 543). On May 30, 2017, plaintiff underwent a PET scan which showed findings consistent with chronic lymphocytic leukemia/small lymphocytic lymphoma. (Tr. 517).

In June 2017, plaintiff began treating with primary care physician Borna Ghoorkhanian, M.D. (Tr. 556). At that time, plaintiff reported chest pain, weight loss, malaise/fatigue, and a dull ache that waxed and waned. On examination, Dr. Ghoorkhanian found "tender fluid collection under [plaintiff's] right axilla, non-erythematous." (Tr. 559). Dr. Ghoorkhanian referred plaintiff to general surgery for seroma and prescribed oxycodone for plaintiff's pain. (Tr. 560). Dr. Ghoorkhanian also noted that plaintiff's lymph node biopsy, bone marrow aspirate, and flow cytometry were consistent with a diagnosis of chronic lymphocytic leukemia and pain. (*Id.*). Plaintiff was pancytopenic and exhibited "B symptoms." (*Id.*). Dr. Ghoorkhanian suspected plaintiff's chest pain was related to lymphadenopathy, and noted he "will try chronic malignancy related pain with opioids." (*Id.*).

---

[3] "The term 'B symptoms' is used to refer to fever, drenching night sweats and loss of more than 10 percent of body weight over 6 months." *See* https://www.lls.org/lymphoma/non-hodgkin-lymphoma/signs-and-symptoms (last visited 3/22/2021).

On July 10, 2017, plaintiff reported that she had been experiencing increased chest pain, nightly drenching sweats, and hot flashes that kept her from sleeping well.  (Tr. 582).  Plaintiff was "[p]ositive for chills, malaise/fatigue and diaphoresis."  (Tr. 583).  Dr. Ghoorkhanian attributed her chest pain to lymphadenopathy (Tr. 582, 586) and increased her pain medication. (Tr. 585).

In August 2017, plaintiff was examined by Dr. Gul.  (Tr. 600).  She reported intermittent chest pain that woke her up at night.  (*Id.*).  She further reported nausea, vomiting, constipation, join pain, dizziness, weakness, and tingling in her fingers.  (*Id.*).  Dr. Gul found bulky lymphadenopathy on examination.  (Tr. 601).  Dr. Gul noted that plaintiff was started on ibrutinib, a targeted medication therapy for chronic lymphocytic leukemia, on July 27, 2017, and that plaintiff would have a port placement within one week.  (Tr. 610).

On October 6, 2017, plaintiff presented for a routine follow-up appointment with Dr. Ghoorkhanian.  (Tr. 635).  Plaintiff reported hallucinations, dysphagia, chronic nausea, fatigue, and poor appetite while she was being treated with ibrutinib for her underlying symptoms.  (Tr. 635-36).  Plaintiff was positive for malaise/fatigue, weight loss, nausea, weakness, and chest pain.  (Tr. 636).  Dr. Ghoorkhanian noted plaintiff's cervical adenopathy had dramatically improved.  (Tr. 639).  He attributed plaintiff's chest pain to lymphadenopathy and prescribed oxycodone.  He prescribed venlafaxine for hot flashes and mood and Zofran for nausea.  (Tr. 640).

On October 11, 2017, plaintiff was seen by Dr. Gul.  (Tr. 656).  Dr. Gul noted that plaintiff had gained weight and was feeling better on ibrutinib.  (*Id*.).  Dr. Gul again talked to

plaintiff about a port implantation, and on October 20, 2017, plaintiff received a port implant for vascular access. (Tr. 673, 677).

On October 31, 2017, Dr. Ghoorkhanian completed a mental and physical capacity assessment form on behalf of plaintiff. (Tr. 429-33). Dr. Ghoorkhanian found no limitations resulting from plaintiff's mental impairments. (Tr. 429-31). From a physical standpoint, however, Dr. Ghoorkhanian opined that based on plaintiff's symptoms from chronic lymphocytic leukemia, plaintiff would need to recline or lie down in excess of standard workday breaks[4] and would be absent from work three or four times a month due to her impairments or treatment. Dr. Ghoorkhanian also reported that plaintiff experienced fatigue, dizziness, nausea, and diarrhea from medications. (Tr. 432-33).

On November 14, 2017, progress notes show plaintiff was tolerating ibrutinib treatment for chronic lymphocytic leukemia fairly well. (Tr. 682). Plaintiff reported she was feeling fatigued, achy, and "terrible," and she had problems eating and drinking. (Tr. 682-83). The following day, plaintiff was seen by oncology. She had been taking ibrutinib daily and reported continued night sweats, fatigue, feeling shaky, and feeling irritable. Plaintiff also reported an episode of syncope five days earlier, which was likely a vaso-vagal event. (Tr. 692, 701).

In February 2018, plaintiff was hospitalized for five days for abdominal pain, nausea, vomiting and diarrhea. (Tr. 885). On discharge, she was reported as mildly impaired with generalized weakness. (Tr. 887).

---

[4] Dr. Ghoorkhanian opined that plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon. (Tr. 432).

11

When Dr. Gul examined plaintiff in February 2018, he noted that plaintiff had previously been admitted to the hospital for the flu. Plaintiff's ibrutinib medication was held in November because of the syncope episode and then restarted in December. Plaintiff reported feeling better and her lymphadenopathy had resolved. (Tr. 820). She was to continue her oral chemotherapy for ongoing disease management. (Tr. 828).

In March 2018, progress notes from Dr. Ghoorkhanian reveal that plaintiff was declining despite the resolution of her lymphadenopathy. (Tr. 850, 854). She had experienced abdominal pain, weight loss and worsening memory; she was offered inpatient admission to the hospital for evaluation but she declined and wished to spend time with her family. (Tr. 850). Dr. Ghoorkhanian ordered additional lab work. (Tr. 875).

On March 7, 2018, plaintiff was examined by Dr. Gul who reported that plaintiff had complained about swelling on her face, nausea, and emesis. (Tr. 1129). Dr. Gul reported that plaintiff's hemoglobin was low, he would order a CT scan, and plaintiff was to continue on ibrutinib. (Tr. 1137).

On May 18, 2018, plaintiff underwent blood transfusion therapy. (Tr. 1142). When seen by Dr. Gul on May 22, 2018, plaintiff was found to have a lung infiltrate. He ordered a chest x-ray and advised that plaintiff would not need antibiotics and could continue on her nausea medications if her x-rays results were clear. (Tr. 1165). At her appointment on June 5, 2018, Dr. Gul reported the chest x-ray showed a lung nodule and referred plaintiff for a pulmonary evaluation. She otherwise was feeling well on ibrutinib and was gaining weight. (Tr. 1166, 1174).

12

Plaintiff was hospitalized from August 3 to August 8, 2018.  (Tr. 1380-1596).  Plaintiff reported worsening back pain that radiated to her abdomen for the past few weeks.  (Tr. 1386).  She was having some altered mental status and had a hard time walking due to an unsteady gait.  She was admitted for further evaluation and management.  Her lab work was positive for drug use.  (*Id.*).  By discharge, her symptoms had resolved.  (*Id.*).  In September 2018, plaintiff was seen by Dr. Gul.  Plaintiff continued to complain about back pain and lower gastrointestinal bleeding.  She was referred for CT scans of her spine.  (Tr. 1183).  She admitted to self-medicating for pain management.  (*Id.*).

Plaintiff was next seen on October 2, 2018 for lab work and follow up.  Plaintiff continued with ibrutinib treatment for chronic lymphocytic leukemia.  Dr. Gul noted that plaintiff was tearful and reported she is not feeling well.  She also reported a four day history of nausea with two episodes of emesis after taking ibrutinib and minimal oral intake.  She additionally endorsed sore throat, cough, runny nose, shortness of breath, headache, chills, diaphoresis, back pain, and dysuria.  Dr. Gul ordered a chest x-ray and blood work.  (Tr. 2126).

Dr. Gul completed a Leukemia medical assessment form on October 3, 2018.  (Tr. 1205-07).  Dr. Gul reported that plaintiff had been treated monthly or as needed for chronic lymphocytic leukemia and her prognosis was "less favorable diagnosis."  (Tr. 1205).  Dr. Gul reported that plaintiff exhibited weight loss, weakness, bone/joint pain, pain/paresthesias, thrombocytopenia, nausea/vomiting and other symptoms as reflected in his office notes.  (*Id.*).  Dr. Gul also referenced his office notes for the positive clinical findings and test results to support his opinion.  (*Id.*).  He opined that plaintiff's symptoms would interfere with her ability

13

to concentrate on, and persist with, work tasks in a way that would cause her to be off task more than 15% of the time. (Tr. 1205). Dr. Gul opined that plaintiff would be absent more than four days of work per month. (Tr. 1207). Dr. Gul also opined that plaintiff could "rarely" lift and carry less than ten pounds and "never" lift and carry ten, twenty, or fifty pounds. (*Id*.). Dr. Gul further reported that plaintiff suffered from nausea, vomiting, risk for infection, and low blood counts as side effects from her medication treatment. (Tr. 1206).

Later that month, Dr. Gul reported that plaintiff continued on her ibrutinib therapy daily. She reported she was not feeling well and talked about gaining weight. Her drug screen was positive for cocaine, marijuana, and benzodiazepines. (*Id*.). In January 2019, plaintiff reported to her primary care physician that she was going to counseling for polysubstance abuse and was continuing to use THC for pain relief. (Tr. 2301). She continued to receive ibrutinib treatment. (*Id*.).

### b. The ALJ's evaluation of the opinion evidence

Dr. Ghoorkhanian opined that plaintiff had no limitations resulting from a mental health standpoint. (Tr. 429-31). The ALJ found Dr. Ghoorkhanian's opinion in this regard to be "persuasive and consistent with the finding that the claimant had mild limitations in her ability to concentrate and focus." (Tr. 30). Dr. Ghoorkhanian also assessed plaintiff's physical capacity. Dr. Ghoorkhanian opined that based on plaintiff's symptoms from chronic lymphocytic leukemia, plaintiff would need to recline or lie down in excess of standard workday breaks and would be absent from work three or four times a month due to her impairments or treatment. Dr. Ghoorkhanian also reported that plaintiff experienced fatigue, dizziness, nausea, and diarrhea

from medications.  (Tr. 432-33).  However, the ALJ failed to articulate any determination or decision as related to Dr. Ghoorkhanian's opinion on these limitations.  (Tr. 30).  *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions. . . .").  The ALJ failed to "*explain* how [she] considered the supportability and consistency factors" for Dr. Ghoorkhanian's opinion on plaintiff's physical limitations as required under 20 C.F.R. § 404.1520c(b)(2) (emphasis added).  The ALJ does not explain whether she found Dr. Ghoorkhanian's opinion – that plaintiff would need to recline or lie down in excess of normally permitted breaks and would miss three to four days per month of work due to her impairments or treatments (Tr. 432-33) – was supported by or consistent with the medical evidence of record.  In the absence of any explanation of the supportability and consistency factors, as the regulations require, the Court is unable to conclude that the ALJ's consideration of Dr. Ghoorkhanian's opinion is supported by substantial evidence.  *See White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning.  Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his RFC analysis and in his evaluation of the opinions of" the treating physicians.).  *See also Tanya L. v. Comm'r of Soc. Sec.*, No. 3:20-cv-78, 2021 WL 981492, at *4-5 (D. Or. Mar. 16, 2021) ("ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1)).

15

Likewise, the ALJ failed to explain how she considered the Section 404.1520c(b)(2) supportability and consistency factors when considering Dr. Gul's opinions. (Tr. 30). The ALJ's decision states that Dr. Gul "submitted a leukemia assessment form in which he opined that the claimant could rarely lift and carry less than 10 pounds." (Tr. 30). In articulating the consideration given to Dr. Gul's opinion in this regard, the ALJ stated, "Dr. Zartash Gul's opinion is also not entirely consistent with the record finding indicative of the claimant's generally normal physical exams." (*Id*.). However, the ALJ failed to acknowledge or address the balance of Dr. Gul's opinion that plaintiff's symptoms from chronic lymphocytic leukemia would interfere with her ability to concentrate on, and persist with, work tasks in a way that would cause her to be off task more than 15% of the time and that she would be absent more than four days of work per month. (Tr. 1205, 1207). Again, the Court is unable to discern the evidentiary basis for the ALJ's consideration of Dr. Gul's opinions given that the ALJ failed to explain or even acknowledge Dr. Gul's opinions in these two respects. 20 C.F.R. § 404.1520c(b)(2). Because the Court is not able to meaningfully review the ALJ's decision in this regard, remand for further proceedings is required.

The ALJ's decision also states, "To the extent these opinions [those of Drs. Ghoorkhanian, Gul, and Kleesattel][5] are consistent, they are accorded consideration; but they are not as persuasive as the DDS opinions that is (sic) mostly consistent with the findings herein other than stated above." (Tr. 30). The state agency physicians found that plaintiff was limited

---

[5] Plaintiff assigns no error to the ALJ's consideration of Dr. Kleesattel's opinion.

16

to occasionally lifting and carrying 20 pounds, frequent lifting or carrying 10 pounds, and standing, walking, and sitting for about six hours in an eight-hour workday. (Tr. 104, 135-36). The ALJ, however, failed to explain *how* the opinions of the state agency physicians were more persuasive than plaintiff's treating physicians pursuant to 20 C.F.R. § 404.1520c. Rather, the ALJ stated that the "DDS opinions are consistent with the record and persuasive" without any further analysis. (Tr. 29). The regulations require the ALJ to "explain" how she considered both "the supportability and consistency factors" in determining the persuasiveness of those opinions. 20 C.F.R. § 404.1520c(b)(2). Accordingly, to the extent the ALJ rejected the opinions of Drs. Ghoorkhanian and Gul because they were not as "persuasive" as the opinions of the state agency physicians, the Court is simply unable to determine the evidentiary basis for the ALJ's conclusion.

The Commissioner also argues that the opinions of Dr. Ghoorkhanian and Dr. Gul relating to absences from work, the need to recline during the workday, and off-task time are opinions on issues reserved to the Commissioner, and the ALJ was not required to consider them. (Doc. 13 at PAGEID 2435, 2438 n.3). The Social Security regulations identify "statements on issues reserved to the Commissioner" as those that would direct a finding of disabled or not disabled under the Social Security Act:

> (i) Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;
>
> (ii) Statements about whether or not you have a severe impairment(s);
>
> (iii) Statements about whether or not your impairment(s) meets the duration requirement (see § 404.1509);

(iv) Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(v) Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations (see § 404.1545);

(vi) Statements about whether or not your residual functional capacity prevents you from doing past relevant work (see § 404.1560);

(vii) Statements that you do or do not meet the requirements of a medical-vocational rule in Part 404, Subpart P, Appendix 2; and

(viii) Statements about whether or not your disability continues or ends when we conduct a continuing disability review (see § 404.1594).

20 C.F.R. § 404.1520b(c)(3).  While an ALJ need not accept a doctor's conclusory statement that a patient is disabled, neither Dr. Ghoorkhanian nor Dr. Gul has opined that plaintiff is "disabled" or "unable to work."  Nor do their opinions appear to fit any of the other § 404.1520b(c)(3) categories.

Instead, plaintiff's treating doctors opined that based on plaintiff's symptoms from chronic lymphocytic leukemia, plaintiff would need to recline or lie down in excess of standard workday breaks and would be absent from work three or four times a month due to her impairments or treatment.  (Tr. 433, 1207).  Dr. Gul further opined that plaintiff's symptoms from chronic lymphocytic leukemia would interfere with her ability to concentrate on, and persist with, work tasks in a way that would cause her to be off task more than 15% of the time.  (Tr. 1205).  The Commissioner contends these opinions are tantamount to opinions that plaintiff is disabled, which is an issue reserved to the Commissioner.  (Doc. 13 at PAGEID 2435, 2438 n.3).  However, the Sixth Circuit has previously rejected this argument. *See Sharp v. Barnhart,*

18

152 F. App'x 503, 509 (6th Cir. 2005) ("Nor are we aware of any regulatory or case support for the third explanation given by the ALJ—that 'the issue of disability based upon frequent absenteeism . . . remains an issue reserved to the Commissioner.'").  Although a treating physician's opinion regarding absenteeism "come[s] close to stating an ultimate opinion about the existence of a disability," when such an opinion is not based upon an uncritical acceptance of the patient's subjective complaints and is made following extensive treatment, the ALJ must still consider the opinion under the regulations.  *Id.* (reversing and remanding because substantial evidence did not support rejection of opinions of treating physicians that plaintiff's impairments would force him to miss ten days of work a month).  Such is the case here, and the ALJ's failure to consider Drs. Ghoorkhanian and Gul's opinions on these issues constitutes reversible error. *See Warren v. Comm'r of Soc. Sec.*, No. 5:20-cv-495, 2021 WL 860506, at *6 (N.D. N.Y. Mar. 8, 2021) ("Having reviewed the ALJ's application of legal standards in this case, this court cannot say that the ALJ sufficiently complied with the mandates of the new regulations regarding the evaluation of medical opinions.  As discussed below, the ALJ's error did not only include the failure to explain how persuasive she found the opinions of [medical sources]; she also failed to adequately address the supportability and consistency factors, as required under 20 C.F.R. §§ 404.1520c(b)(2) and 416.927(c)(b)(2).").  Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze the medical opinions pursuant to the requirements of 20 C.F.R. § 404.1520c.

**2. Whether the ALJ erred in analyzing plaintiff's subjective complaints and erred at Step Five of the sequential evaluation process by relying on answers to improper hypothetical questions**

In her second assignment of error, plaintiff argues the ALJ erred in assessing plaintiff's subjective complaints on weakness and fatigue. (Doc. 8 at PAGEID 2416-17). In her third assignment of error, plaintiff argues that the ALJ erred at Step Five of the sequential evaluation process by relying on answers to improper hypothetical questions by leaving out the number of days of work that plaintiff would miss. (*Id*. at PAGEID 2417).

As stated above, the undersigned orders that this matter be remanded because the ALJ failed to properly analyze the medical opinions of Dr. Ghoorkhanian and Dr. Gul according to 20 C.F.R. § 404.1520c. As resolution of this issue on remand may impact the remainder of the sequential evaluation process, it is not necessary to address plaintiff's second and third assignments of error. *See Trent v. Astrue*, No. 1:09-cv-2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's arguments had merit, the outcome would be the same, i.e., a remand for further proceedings and not an outright reversal for benefits.

**III. This matter will be reversed and remanded for further proceedings**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

This matter is reversed and remanded for further proceedings with instructions to the ALJ to reconsider the opinion evidence from plaintiff's treating physicians in accordance with 20 C.F.R. § 404.1520c; to reconsider plaintiff's subjective complaints and RFC; and for further medical and vocational development as warranted.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date:  3/29/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

21